UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

VICTORIA S.K., on behalf of T.N.K.S.,

                              Plaintiff,                          5:21-CV-1119 (GTS)

v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                                  OF COUNSEL:

OLINSKY LAW GROUP                  HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.        KATHRYN S. POLLACK, ESQ.
OFFICE OF GENERAL COUNSEL        Special Assistant U.S. Attorney
  Counsel for Defendant
6401 Security Boulevard
Baltimore, MD 21235

GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

Currently before the Court, in this Social Security action filed by Victoria S.K.

("Plaintiff") on behalf of her son, T.N.K.S., against the Commissioner of Social Security

("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the

parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 11, 16.) For the reasons set

forth below, Plaintiff's motion is denied, and Defendant's motion is granted.

I.      **RELEVANT BACKGROUND**

      **A.**      **Relevant Factual Background**

T.N.K.S. was born on February 14, 2007.  At the time of his hearing, T.N.K.S. was 13

years old.  T.N.K.S.'s alleged impairments are a learning disorder, oppositional defiant disorder

("ODD"), and attention deficit hyperactivity disorder ("ADHD").

### B.      Relevant Procedural History

On March 31, 2016, Plaintiff applied for Title XVI Supplemental Security Income

benefits on behalf of T.N.K.S., alleging disability beginning July 1, 2010 due to learning and

behavioral disabilities.  On June 17, 2016, Plaintiff's application was initially denied, after which

she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On July 5,

2018, an ALJ denied Plaintiff's claim after a hearing.  On July 27, 2020, the Appeals Council

issued an order remanding this case for further evaluation by a different ALJ.  Following a

hearing on November 23, 2020, a different ALJ (Kenneth Theurer) issued an unfavorable

decision on January 12, 2021, finding that T.N.K.S. had not been disabled since March 31, 2016.

On August 10, 2021, the Appeals Council denied Plaintiff's request for review, rendering the

ALJ's decision the final decision of the Commissioner.  Thereafter, Plaintiff timely sought

judicial review in this Court.

### C.      Summary of the ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and

conclusions of law.  (T. 15-29.)  First, the ALJ found that T.N.K.S. was a "school-age child"

pursuant to 20 C.F.R. § 416.926a(g)(2) on March 31, 2016 (the date the application for benefits

was filed).  (T. 15.)  Second, the ALJ found that T.N.K.S. had not engaged in substantial gainful

activity since March 31, 2016.  (*Id*.)  Third, the ALJ found that T.N.K.S. suffers from three

severe impairments 20 C.F.R. § 416.924(c): a learning disorder, oppositional defiant disorder

("ODD"), and attention deficit hyperactivity disorder ("ADHD"). (*Id*.) Fourth, the ALJ found

that T.N.K.S. does not have an impairment or combination of impairments that meets or

medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I (the

"Listings"). (*Id*. at 16-17.) Fifth, the ALJ found that T.N.K.S. does not have an impairment or

combination of impairments that functionally equals the severity of an impairment set forth in the

Listings. (*Id*. at 17-28.) Sixth, and finally, the ALJ concluded that T.N.K.S. has not been

disabled, as defined by the Social Security Act, since March 31, 2016, the date his application

was filed. (*Id*. at 29.)

## II.    THE PARTIES' BRIEFINGS ON THEIR CROSS-MOTIONS

### A.    Summary of Plaintiff's Arguments

Generally, in her motion for judgment on the pleadings, Plaintiff argues that the ALJ's

functional equivalency determination is not supported by substantial evidence, because he failed

to properly weigh the March 2018 opinion of T.N.K.S.'s treating psychiatrist, Dr. Catalin

Butunoi, M.D. (that T.N.K.S. has a "marked" limitation in the domain of attending to and

completing tasks), which was consistent with the May 2018 opinion of T.N.K.S.'s eighth-grade

homeroom, social studies and science teacher, Ms. Kay Bick (that T.N.K.S. had a "serious

problem" in the area of "[c]ompletely work accurately without careless mistakes"). (Dkt. No. 11,

at 12-21 [Plf.'s Memo. of Law, attaching pages "10" through "19"].)

### B.    Summary of Defendant's Arguments

Generally, in her motion for judgment on the pleadings, Defendant argues that the ALJ

supportably concluded that T.N.K.S. had a "less than marked" limitation in the domain of

attending to and completing tasks after properly weighing Dr. Butunoi's above-referenced

opinion as "not consistent" with the following four portions of "the overall record": (1) the June 2016 opinion of child psychiatric consultative examiner, Dr. Cheryl Loomis, Ph.D., that T.N.K.S. had "no limitation in his ability to attend to, follow, and understand age-appropriate directions" and "complete age-appropriate tasks"; (2) the June 2016 opinion of the State Agency medical consultant, Dr. Thomas Harding, Ph.D., that the limitation in question was "less than marked"; (3) the February and March 2018 opinions of Dr. Butunoi that T.N.K.S. maintained normal attention and concentration during visits with mental health providers; and (4) the March 2018 opinion of Ms. Bick that T.N.K.S. had a range of abilities in attending and completing tasks (finding a "serious problem" in one of 13 areas but only "[n]o problem," a "slight problem," or an "obvious problem" in the remaining 12 areas).  (Dkt. No. 16, at 4-17 [Def.'s Memo. of Law, attaching pages "3" through "16"].)

III.    RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any

5

"individual under the age of [eighteen] who engages in substantial gainful activity . . . ." 42

U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed

in determining whether a child can meet the statutory definition of disability.  20 C.F.R. §

416.924;  *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*,

02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y.  May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis

employed in adult disability cases, requires a determination of whether the child has engaged in

substantial gainful activity.  20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488.  If so, then

both statutorily and by regulation the child is ineligible for SSI benefits.  42 U.S.C. §

1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test

next requires examination of whether the child suffers from one or more medically determinable

impairments that, either singly or in combination, are properly regarded as severe, in that they

cause more than a minimal functional limitation.  20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp.

2d at 488; *Ramos*, 2003 WL 21032012, at *7.  In essence, "a child is [disabled under the Social

Security Act] if his impairment is as severe as one that would prevent an adult from working."

*Zebley v. Sullivan*, 493 U.S. 521, 529 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at

the third step, whether it meets or equals a presumptively disabling condition identified in the

listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings").  *Id.*

Equivalence to a listing can be either medical or functional.  20 C.F.R. § 416.924(d); *Kittles*, 245

F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If an impairment is found to meet, or

qualify as medically or functionally equivalent to, a listed disability and the twelve-month

durational requirement is satisfied, the claimant will be deemed disabled.  20 C.F.R. §

416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

     Analysis of functionality is informed by consideration of how a claimant functions in six

main areas referred to as "domains."  20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at

*8. The domains are described as "broad areas of functioning intended to capture all of what a

child can or cannot do."  20 C.F.R. § 416.926a(b)(1).  Those domains include the following: (i)

[a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and

relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and

(vi) [h]ealth and physical well-being.  20 C.F.R. § 416.926a(b)(1).

     Functional equivalence is established in the event of a finding of an "extreme" limitation,

meaning "more than marked," in a single domain.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL

21032012, at *8.  An "extreme limitation" is an impairment that "interferes very seriously with

[the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. §

416.926a(e)(3)(I) (emphasis added).

     Alternatively, a finding of disability is warranted if a "marked" limitation is found in any

two of the listed domains.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A

"marked limitation" exists when the impairment "interferes seriously with [the claimant's]

ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).

"A marked limitation may arise when several activities or functions are impaired, or even when

only one is impaired, as long as the degree of limitation is such as to interfere seriously with the

ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## IV.    ANALYSIS

After carefully considering the matter, the Court finds that ALJ Theurer supportably concluded that T.N.K.S. had a "less than marked" limitation in attending to and completing tasks (after properly weighing Dr. Butunoi's March 2018 opinion to the contrary), for the reasons stated in Defendant's memorandum of law.  *See, supra,* Part II.B. of this Decision and Order.  To those reasons, the Court adds the following analysis.

"In the domain of 'Attending and completing tasks,' [the Social Security Administration] consider[s] a child's ability to focus and maintain attention, and to begin, carry through, and finish activities or tasks. We consider the child's ability to initiate and maintain attention, including the child's alertness and ability to focus on an activity or task despite distractions, and to perform tasks at an appropriate pace. We also consider the child's ability to change focus after completing a task and to avoid impulsive thinking and acting. Finally, we evaluate a child's ability to organize, plan ahead, prioritize competing tasks, and manage time."  SSR 09-4p.

Under the regulations governing at the time, treating source opinions are afforded "controlling weight" only when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in . . . [the] record."  20 C.F.R. § 416.927(c)(2); *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  When the ALJ does not afford controlling weight to a treating source opinion, the ALJ applies the following regulatory factors in determining the weight to give the opinion: (1) length of the treatment relationship and the frequency of examination, (2) the nature and extent of the

treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion

with the record as a whole, (5) the specialization of the physician, and (6) other factors that tend

to support or contradict the medical opinion. 20 C.F.R. § 416.927(c)(2)-(6).

The Second Circuit has distilled the regulatory framework down into four factors (the

"*Burgess* factors"): "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount

of medical evidence supporting the opinion; (3) the consistency of the opinion with the

remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at

95-96 (internal quotation marks omitted). The ALJ must "explicitly consider" the *Burgess* factors

when assigning less-than-controlling weight to a treating source opinion; if not, the Court will

conduct "a searching review of the record" and will affirm where "the substance of the treating

physician rule was not traversed." *Estrella*, 925 F.3d at 96 (quoting *Halloran v. Barnhart*, 362

F.3d 28, 32 (2d Cir. 2004)).

In evaluating the March 2018 opinion of T.N.K.S.'s treating psychiatrist, Dr. Butunoi, the

ALJ found as follows:

> The claimant's psychiatrist, Catalin Butunoi, M.D. completed a
> medical source statement in March of 2018. Dr. Butunoi opined
> the claimant has none to marked limitations in acquiring and
> using information; moderate to marked limitations in attending and
> completing tasks; none to mild limitations in interacting and
> relating with others; none to mild limitations in moving about
> and manipulating objects; none to moderate limitations in caring
> for self; and no limitations in health and physical well-being
> (Exhibit 8F). I give this opinion some weight; however, some of
> the limitations are not consistent with the overall record. For
> example, the marked limitations in attending and completing tasks
> are inconsistent with the claimant's instances of maintaining
> normal attention and concentration at times, such as during visits
> with his mental health providers (Exhibit 7F). Further, the reports
> of the claimant's bullying are inconsistent with none to mild
> limitations in interacting and relating with others.

9

(Tr. 22-23.)  Immediately after evaluating the opinion of Dr. Butunoi, the ALJ evaluated the

opinion of T.N.K.S.'s teacher, Ms. Bick, as follows:

> In May of 2018, the claimant's homeroom, social studies and
> science teacher stated he has an obvious problem to a serious
> problem in acquiring and using information: no problem to a
> serious problem in attending and completing tasks; a slight
> problem to a serious problem in interacting and relating with
> others; no problem in moving about and manipulating objects; no
> problem interacting and relating with others; no problem in moving
> about and manipulating objects; no problem to a serious problem
> in caring for self; and no problem in health and physical well-being
> (Exhibit 14E). I considered this opinion, however, it does note the
> claimant has significant improvement on medication as he is
> calmer, more respectful, listens, and follows direction with
> medication. Accordingly, I give this opinion some weight in
> determining the severity of the claimant's impairments.

(*Id*. at 23.)  In addition, immediately *before* evaluating the opinion of Dr. Butunoi, the ALJ

evaluated the opinions of child psychiatric consultative examiner, Dr. Loomis, and State Agency

consultant, Dr. Harding, as follows:

> The claimant underwent a child psychiatric consultative
> examination in June of 2016, with Cheryl Loomis, Ph.D. The
> claimant attended the examination with his mother. On
> examination, the claimant was appropriately dressed and groomed.
> He had mildly restless motor behavior, and appropriate eye contact.
> The claimant's attention and concentration were mildly impaired,
> but he could count from one to twenty, and complete simple
> calculations. His memory was intact, and his intellectual
> functioning appeared to be in the average range. His judgment was
> noted as fair due to impulsivity. Dr. Loomis said the claimant has
> no limitation in the ability to attend to, follow, and understand
> directions, complete tasks, ask questions, or be aware of danger
> and take needed precautions. Dr. Loomis opined the claimant has a
> moderate limitation in his ability to adequately maintain
> appropriate social behavior, respond appropriately to changes in his
> environment, and interact adequately with peer and adults, and has
> a marked limitation in his ability to learn in accordance with
> cognitive functioning. Dr. Loomis said the examination was
> consistent with his cognitive problems, which may significantly

interfere with his ability to function on a daily basis (Exhibit 2F). I
give this opinion some weight as Dr. Loomis examined
the claimant, but she is not a treating source. The examination
supports the overall record showing the claimant has a marked
limitation in acquiring and using information, but less than
marked or no limitations in all other areas of functioning.

State Agency consultant, Thomas Harding, PhD., reviewed the
claimant's file at the initial level in June of 2016, and opined the
claimant has less than marked limitations or none in all domains
of functioning (Exhibit 2A). While State Agency consultants are
deemed by regulation to be highly qualified experts in Social
Security disability determination, they are not examining
sources (20 CFR 416.927(e)(2)(i)). Moreover, a portion of the
record was subsequently received since State Agency review. For
these reasons, Dr. Harding's opinion is given some weight.

(*Id*. at 22.)

Plaintiff does not expressly argue that the ALJ did not explicitly consider the *Burgess*

factors when assigning less-than-controlling weight to the opinion of Dr. Butunoi. (*See generally*

Dkt. No. 11, at 14-21 [Plf.'s Memo. of Law, attaching pages "12" through "19," listing factors

only].)  As a result, he has waived the issue.  *See Whipple v. Astrue,* 479 F. App'x 367, 370 (2d.

Cir. 2012) ("[Plaintiff] failed to raise this claim before the magistrate judge or the district court.

We therefore deem the issue forfeited."); *Snyder v. Colvin*, 16-CV-0046, 2017 WL 61946, at *6

n.1 (N.D.N.Y. Jan. 5, 2017) (Kahn, J.) ("Because Snyder failed to raise this claim in [his] brief . .

. the Court deems the issue waived"); N.D.N.Y. General Order No. 18 (stating that the Court

considers issues "properly raised in the briefs").

Even if Plaintiff had not waived the issue, the Court would find that the ALJ explicitly

considered the *Burgess* factors.  For example, the ALJ explicitly considered the frequency,

length, nature, and extent of treatment provided by Dr. Butunoi.  (T. 21 [stating that Plaintiff

began counseling at "Brownell"–Dr. Butunoi's practice–in November 2016, and continued

through July 2018].)  The ALJ sufficiently considered the amount of medical evidence

supporting Dr. Butunoi's opinion, to the extent he had a need to do so (given the fact that Dr.

Butunoi provided no objective medical evidence in support of her opinions).  (*Id*. at 22 [stating

that Dr. Butunoi's opinion was based on the findings reported in a medical source statement].)

The ALJ explicitly considered the consistency of the opinion with the remaining medical

evidence.  (*See, e.g., id.* at 22 [stating that Dr. Butunoi's opinions are "inconsistent with the

claimant's instances of maintaining normal attention and concentration at times, such as during

visits with his mental health providers"].)  Finally, the ALJ explicitly considered whether the

physician is a specialist.  (*Id*. at 23 [stating that Dr. Butunoi was a "psychiatrist"].)

In any event, even if the ALJ did not explicitly consider the *Burgess* factors, the Court has

conducted "a searching review of the record" and finds that "the substance of the treating

physician rule was not traversed," because the ALJ comprehensively set forth "good reasons" for

assigning weight to Dr. Butunoi's opinion.  As Defendant argues in her memorandum of law, the

ALJ afforded only "some weight" to Dr. Butunoi's opinion that T.N.K.S. had a "less than

marked" limitation in the domain of attending to and completing tasks, because that opinion was

"not consistent" with "the overall record."  (T. 22-23.)  More specifically, the ALJ cited four

portions of the record as not being consistent with Dr. Butonoi's opinion: (1) the June 2016

opinion of Dr. Loomis (a child psychiatric consultative examiner); (2) the June 2016 opinion of

Dr. Harding (a State Agency medical consultant); (3) the February and March 2018 opinions of

Dr. Butunoi; and (4) the March 2018 opinion of Ms. Bick.  (*Id*.)  The Court agrees.

On June 9, 2016, Dr. Loomis (a child psychiatric consultative examiner) opined that

T.N.K.S. "evidenced no limitation in his ability to attend to, follow, and understand

age-appropriate directions, [and] complete age-appropriate tasks . . . ." (T. 561.)  Her

examination of T.N.K.S. showed that he had a "mildly restless motor behavior," a "[c]oherent

and goal directed" thought process, a "[m]ildly impaired" attention and concentration, "[i]ntact"

recent and remote memory skills, and "average" intellectual functioning.  (*Id*. at 560-61.)

Her cognitive testing of T.N.K.S. showed that, despite having a full-scale IQ of only 84, he had

"average" processing speed, working memory, and visual spatial skills.  (*Id*. at 564-65.)

On June 17, 2016, Dr. Harding (a State Agency medical consultant) opined that T.N.K.S.

had a "less than marked" limitation in the domain of attending to and completing tasks.  (T. 106.)

Dr. Harding noted that T.N.K.S.'s "IEP stated that [he] needs to have redirection and refocuing

to not be distracted by the negative behaviors of others and stay focused on his school work."

(*Id*.)  However, based on a consultative examination, Dr. Harding found that T.N.K.S.'s

"attention/concentration [was only] mildly impaired," and that his "[r]ecent/remote memory

skills [were] intact."  (*Id*.)

On February 28, 2018, March 28, 2018, and March 29, 2018, Dr. Butunoi opined that

T.N.K.S. showed "no evidence of a formal thought disorder" and "maintained a stable level of

consciousness during the entirety of . . . [mental status] evaluation[s]."  (T. 646-47, 651-52, 656-

57.)

On May 14, 2018, Ms. Bick (T.N.K.S. eighth grade teacher) opined that T.N.K.S. had

"problems" functioning in the domain of "attending and completing tasks."  (Tr. 385.)  However,

in so doing, Ms. Bick found that T.N.K.S. had no "very serious" problems in any of the 13

activities involved in that domain.  (*Id*.)  Granted, she found that he had a "serious" problem in

the activity of "[c]ompleting work accurately without careless mistakes."  (*Id*.)  However, she

found that he had only an "obvious" problem in the following four activities: (1) "[f]ocusing long enough to finish assigned activity or task"; (2) "[r]efocusing on task when necessary"; (3) "[o]rganizing own things or school materials"; and (4) "[c]ompleting class/homework assignments." (*Id.*) Moreover, she found that he had only a "slight" problem in the following five activities: (1) "[p]aying attention when spoken to directly"; (2) "[c]arrying out multi-step instructions; (3) "[c]hanging from one activity to another without being disruptive"; (4) "[w]orking without distracting self or others"; and (5) "[w]orking at reasonable pace/finishing on time." (*Id.*) Finally, she found that he had "no" problem in the remaining three activities: (1) "[s]ustaining attention during play/sports activities"; (2) "[c]arrying out single-step instructions; and (3) "[w]aiting to take turns." (*Id.*)

Simply stated, the ALJ's finding was supported by substantial evidence.

For each of these alternative reasons, the Court denies Plaintiff's motion and grants Defendant's motion.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED** and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: February 15, 2023
     Syracuse, New York

Glenn T. Suddaby
U.S. District Judge